# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EVETTE WILLIAMS o/b/o A.B.K.,<br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br>Defendant. | CIVIL ACTION NO. 11-6557 |

Baylson, J.     January 11, 2013

## MEMORANDUM ON SOCIAL SECURITY APPEAL

Plaintiff Evette Williams, on behalf of her daughter, A.B.K., seeks judicial review of a decision by the Commissioner (the "Commissioner") of the Social Security Administration (the "SSA") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-33, 1381-83(f). After careful consideration of all the relevant facts and circumstances, and for the reasons explained below, Plaintiff's request for review of the May 28, 2009 decision of the Administrative Law Judge is DENIED and her Complaint is DISMISSED with prejudice.

### I. Factual and Procedural Background

A.B.K. is a 14-year old girl who suffers from Marfan's syndrome, a genetic disorder that can affect the cardiovascular, musculoskeletal, neurological, and pulmonary systems. Patients with Marfan's syndrome can experience symptoms ranging from mild to severe. A.B.K.'s father also suffers from Marfan's syndrome. The disease does not appear to have affected A.B.K.'s vision, lungs, or nerves, but it has affected her spine,

1

joints, and heart. (Tr. 20-21). Nonetheless, she was enrolled in school throughout the time at issue in this litigation. (Tr. 22, 24, 112, 142-43).

On December 14, 2006, Evette Williams, A.B.K.'s mother, filed an application on behalf of A.B.K. for Supplemental Security Income, pursuant to Title XVI of the Social Security Act. The application was denied without an appeal on May 2, 2007. On August 30, 2007, Williams filed a second SSI application on behalf of A.B.K., which was denied on April 1, 2008. Williams filed a timely request for a hearing. The hearing was held in Philadelphia on February 19, 2009, and both A.B.K. and Williams testified. (Tr. 17). On May 28, 2009, the AJL entered a decision finding A.B.K. was not disabled because her impairment did not meet, medically equal, or functionally equal a listed impairment under the Social Security Act. (Tr. 17-26).[1]

Williams filed a timely request for review by the Appeals Council, submitting additional evidence to demonstrate A.B.K.'s disability. This evidence consisted of records from A.B.K.'s physical and occupational therapy sessions between October 14, 2009 and May 4, 2010. The Appeals Council gave consideration to the new evidence, but on August 19, 2011, denied the request for review. (Tr. 1, 6).

On October 26, 2011, Williams filed a Complaint in this Court, requesting review of the Commissioner's decision. (ECF 3). On June 18, 2012, Williams filed a Brief and Statement of Issues in Support of Request for Review. (ECF 10). On June 26, 2012, the

---

[1] In its May 28, 2009 decision, the ALJ considered "the date the application was filed" to be August 30, 2007, referring to the date of William's second SSI application. (Tr. 17). Plaintiff contends the controlling application date is December 14, 2006, referring to the date of the first SSI application. (Plaintiff's Brief and Statement of Issues in Support of Request for Review, at 1) (ECF 10). The Court need not resolve this issue because it concludes, as explained below, that the ALJ did not err in finding A.B.K. was not disabled from August 30, 2007 onwards (the date of the second application), and there is no evidence suggesting a different finding should be made for the December 14, 2006 through August 30, 2007 period.

2

Commissioner filed a Response in opposition thereto (ECF 11), and July 10, 2012, Williams filed a Reply (ECF No. 12).

**II. Legal Standards**

**A. Jurisdiction**

The Social Security Act provides for judicial review by this Court of any "final decision of the Commissioner of Social Security" in a disability proceeding. 42 U.S.C. §§ 405(g), 1383(c)(3). A district court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Id. When an Appeals Council denies a petitioner's request for review, the ALJ's decision operates as the Commissioner's final decision for the purposes of judicial review. Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001).

**B. Standard of Review**

On judicial review of the Commissioner's decision, the Commissioner's findings of fact, "if supported by substantial evidence," are conclusive. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Comm'r of Soc. Sec., 631 F.3d 632, 633 (3d Cir. 2010) (internal quotation marks omitted). It is a standard requiring "less than a preponderance of the evidence but more than a mere scintilla." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).

In reviewing the record for substantial evidence, however, the Court must "not weigh the evidence or substitute [its own] conclusions for those of the fact finder."

Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (internal quotation marks omitted).

The Court's review of the legal standards applied by the ALJ is plenary. See Allen v. Barnhart, 417 F.3d 396, 398 (3d Cir. 2005).

**C. Disability Claims Analysis**

The Supplemental Security Income program provides benefits to disabled children if they meet certain income and resource limitations. See 42 U.S.C. § 1381 et seq. The statute provides that a child under eighteen:

> [S]hall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

Id. § 1382c(a)(3)(C)(i).

The regulations promulgated by the Commissioner of the Social Security Administration provide a three-step analysis the agency deploys in determining whether a child is disabled under the statute. First, if the child "is doing substantial gainful activity," he will be deemed not disabled. 20 C.F.R. § 416.924. Second, the agency will consider whether the child suffers from a "physical or mental impairment" or from a "combination of impairments" that is "severe." If the impairment or combination of impairments is not severe, the child will be deemed not disabled. Id. Third, the agency will decide whether an impairment or combination of impairments, if found to be severe, "meets, medically equals, or functionally equals the listings." If so, and if the impairment also meets the durational requirement, the agency will enter a finding of disability. Id.; see also

Morrison ex rel. Morrison v. Comm'r of Soc. Sec., 268 Fed. Appx. 186, 187 (3d Cir. 2009) ("A child under eighteen is only eligible for SSI benefits if (1) he is not doing substantial gainful activity; (2) he has a medically determinable impairment or combination of impairments that is severe; and (3) the impairment or combination of impairments meets, medically equals, or functionally equals the severity of one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.").

The regulations further provide that an impairment or combination of impairments "functionally equals" a listed impairment if it "result[s] in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(a). The six domains used to assess the child's functional limitations are: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being." Id. § 416.926a(b)(1). According to the regulations, a limitation is "marked" when it "interferes seriously with [the child's] ability to independently initiate, sustain or complete activities." Id. § 416.926a(e)(2)(i). A limitation is "extreme" when it "interferes *very* seriously with [the child's] ability to independently initiate, sustain or complete activities." Id. § 416.926a(e)(3)(i) (emphasis added).

### III. Discussion

### A. The ALJ's Findings

The ALJ found A.B.K. had not engaged in substantial gainful activity at any time relevant to his decision and that she suffered from Marfan's syndrome, a "severe"

impairment. These findings were undisputed. (Commissioner's Response to Request for Review, at 4) (ECF 11).

However, the ALJ determined A.B.K. was not disabled because her impairment did not meet, medically equal or functionally equal the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I. (Tr. 20-21). In reaching this conclusion, the ALJ first concluded that A.B.K. did not have "a catastrophic congenital abnormality," which is Listing 110.08B in the Commissioner's regulations, and that her impairment did not "meet or [medically] equal any other listings, including 4.10." (Tr. 21). Next, the ALJ evaluated A.B.K.'s functioning across the six functional domains specified in the regulations to determine whether her impairment was "functionally equal" to a listing. The ALJ found A.B.K. had "no limitation" in three of the domains: acquiring and using information, interacting and relating with others, and caring for self; that she had a "less than marked limitation" in two of the domains: attending and completing tasks and moving about and manipulating objects; and that she had a marked limitation in one domain: health and physical well-being. (Id. at 22-26). Given that the regulations require an impairment to result in either an "extreme" limitation in one domain or a "marked" limitations in two domains, for the impairment to "functionally equal" a listing, see 20 C.F.R. § 416.926a(a), A.B.K.'s impairment did not qualify. (Tr. 25-26). She was deemed not disabled.

**B. Analysis**

Plaintiff makes two contentions in support of her request for review. First, she contends the ALJ erred in determining her daughter had a "marked" limitation in only one functional domain. According to Plaintiff, substantial evidence shows A.B.K. also

6

suffered marked limitations in two additional domains – moving about and manipulating objects, and attending and completing tasks. Second, Plaintiff contends the ALJ erred in concluding the testimony of Williams and A.B.K. was not credible, with no explanation and with no justification. Each contention will be evaluated in turn.

### 1. The ALJ's Findings Regarding A.B.K.'s "Less than Marked" Limitations

The AJL concluded A.B.K. had no limitation in three functional domains, a "less than marked" limitation in two functional domains; and a marked limitation in one functional domain. Plaintiff disputes the two "less than marked" limitation findings, contending that in the domain of "moving about and manipulating objects" and in that of "attending and completing tasks," substantial evidence in the record shows A.B.K.'s limitations are marked. As discussed below, the Court disagrees.

#### a. Moving About and Manipulating Objects

The domain of moving about and manipulating objects covers "gross and fine motor skills." 20 C.F.R. § 416.926a(j). The regulations provide that when evaluating whether children ages 6 to 12 are competent in this domain, an ALJ should consider whether they can "move at an efficient pace about [their] school, home, and neighborhood," "enjoy a variety of physical activities, such as running and jumping," and "use many kitchen and households tools independently, use scissors, and write." Id. § 416.926a(j)(2)(iv). In particular, the ALJ should consider the child's ability to perform movements such as "rising or pulling yourself from a sitting to a standing position; pushing yourself up; . . . [and] moving yourself forward and backward in space as when crawling, walking, or running, and negotiating different terrains (e.g., curbs, steps, and

7

hills."). Id. § 416.926a(j)(1)(i). Examples of shortcomings in this domain, which could be (but are not necessarily) grounds for finding an individual to have a marked limitation, are experiencing "muscle weakness, joint stiffness, or sensory loss . . . that interferes with [one's] motor activities"; having trouble climbing up and down stairs; having difficulties "coordinating gross motor movements"; and having poor hand-eye coordination when using pencils or scissors. Id. § 416.926a(j)(3).

The ALJ concluded A.B.K.'s limitation in the moving about and manipulating objects domain was "less than marked." While she suffered "fatigability, reduced stamina or endurance, and limitations on exercising," and while her symptoms "placed certain limitations on some physical skills," they did not seriously interfere with her ability to perform the core activities expected of a child her age – i.e., moving at an efficient pace at home or school, running and jumping, and manipulating objects such as household appliances. (Tr. 22, 26).

The ALJ's finding is supported by ample evidence in the record. In a questionnaire dated February 17, 2008, A.B.K.'s third grade teacher recorded "no problem" with A.B.K.'s ability to move or manipulate objects, such as by crouching, walking, running, jumping, climbing, managing the pace of her physical activities, and integrating sensory input with motor output. (Tr. 119). She "demonstrat[ed] strength and coordination," and her only limitation was that she "performs in gym on limited conditions (base[d] on her illness)" and "is easily tired out." (Tr. 119). A.B.K.'s medical records also show her bodily movement and object-manipulation to be less than markedly limited. On March 23, 2007, A.B.K. was seen by Dr. Floyd Nasuti, a consulting physician for the Pennsylvania Bureau of Disability Determination, who found: "She can

8

climb steps, etc. Motor ability is fine. . . . She is moving about and manipulating objects." (Tr. 143). He observed A.B.K. "tires easily," such as after walking one-square block, but "everything is quite normal" and her limitations were "purely with strength, perseverance, and the double-jointed condition." (Tr. 143). On June 3, 2008, A.B.K. was examined by Dr. Tracey Wright of the Children's Hospital of Philadelphia ("CHOP"). Dr. Wright observed A.B.K. had a "[n]ormal gait" and "[n]ormal joint examination except tender to palpation around both patella." She recommended A.B.K. take naprosyn daily and use shoe insoles to relieve her joint pain, but did not recommend she otherwise limit her activities. (Tr. 203). Dr. Denis Drummond, an orthopedic specialist at CHOP, examined A.B.K. on December 17, 2008 and found she was "not having pain or neurological symptoms such as those associated with bowel or bladder, or any decreased sensory distribution throughout the legs or numbness or tingling. Her activities are limited by her syndrome, but she does play and run around with her friends." (Tr. 206). Her gait showed a "normal heel-toe reciprocal pattern" and she could "heel walk, toe walk, and deep-knee bend with good balance." (Tr. 208). Finally, Dr. Paige Kaplan of the Connective Tissue Disorder Multispecialty Clinic at CHOP saw A.B.K. on March 25, 2009, and recommended she participate in physical therapy and do home exercises to "strengthen muscles around joints and stabilize joints." This recommendation was made in order to minimize A.B.K.'s risks of developing arthritis going forwards, but Dr. Kaplan did not note any extant problems with A.B.K.'s bodily movements beyond that she "is not allowed to participated in isometric exercises." (Tr. 215-218).[2]

---

[2] Plaintiff asserts the ALJ did not properly consider the opinions of Drs. Nasuti or Kaplan when he evaluated A.B.K.'s abilities in the moving about and manipulating objects domain. (Plaintiff's Brief and Statement of Issues in Support of Request for Review, at 5-7, 9) (ECF 10) ("[D]espite a clear regulatory command to 'always consider' a medical opinion like that of Dr. Nasuti, the ALJ disregarded it without

The teacher evaluation and medical records support the ALJ's finding that while A.B.K. suffered physical shortcomings – she tired easily, had relatively low physical stamina, and had to limit her participation in gym class – these shortcomings did not "seriously" interfere with her abilities in the "moving about and manipulating objects" domain. As reflected by the teacher evaluation and medical reports, A.B.K.'s limitations did not prevent her from "mov[ing] at an efficient pace about [her] school, home, and neighborhood," "enjoy[ing] a variety of physical activities, such as running and jumping" (albeit for short periods), or using "households tools" such as scissors. 20 C.F.R. § 416.926a(j)(2)(iv). Accordingly, the ALJ did not err in finding A.B.K.'s limitations were not "marked" in this domain. Id. § 416.926a(e)(2)(i) (providing a limitation is "marked" when it "interferes seriously with [the child's] ability to independently initiate, sustain or complete activities").

Plaintiff argues in the alternative that should we affirm the ALJ's finding regarding this functional domain, we should remand the case in light of new evidence. Under 42 U.S.C. § 405(g), the Court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." Plaintiff contends the "new evidence" warranting remand under Section 405(g) are records from A.B.K.'s physical

---

explanation."). First, the ALJ did consider each doctor's evaluation, and his opinion cites both on several occasions. (Tr. 20, 22). Second, neither doctor's evaluation would support a finding that A.B.K.'s limitations in moving about and manipulating objects were "marked." As explained above, Dr. Nasuti observed that while A.B.K. "tires easily," "she can climb steps, etc. Motor ability is fine. . . . *She is moving about and manipulating objects*." (Tr. 143) (emphasis added). Dr. Kaplan recommended that A.B.K. participate in physical therapy to avoid developing early onset arthritis (id. at 218), but made no finding whatsoever that A.B.K. was currently suffering from extreme or serious limitations in her ability to move about and manipulate objects. (Id. at 215-18).

therapy sessions between October 14, 2009 and May 4, 2010, which allegedly show her physical limitations in moving about and manipulating objects to have been significant. Plaintiff claims she had "good cause for [failing] to incorporate such evidence into the record in [the] prior proceeding," 42 U.S.C. § 405(g), because the records were not available at the time of the ALJ's decision on May 28, 2009.

The Court concludes remand would be inappropriate because the records from A.B.K.'s physical therapy sessions are not "material" under Section 405(g). For new evidence to be "material," it must "relate to the time period for which benefits were denied" and there must be a "reasonable possibility that [it] would have changed the outcome of the [Commissioner's] determination." Szubak v. Sec'y of Health & Human Servs., 745 F.2d 831, 833 (3d Cir. 1983). Neither requirement is met here. The records pertain to A.B.K.'s physical condition between October 2009 and May 2010, a period of time *after* the ALJ rendered its decision. See id. (holding remand is not warranted in the case of "evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition"). More importantly, there is no reasonable possibility the records would change the ALJ's decision because they are consistent with the his finding that A.B.K.'s limitations in moving about and manipulating objects were not marked. The records show that while A.B.K. had "decreased strength and coordination" and could not run or walk "for long periods of time" (Tr. 242), and while she was instructed to avoid certain physical activities like isometric exercises (id. at 225) and running in gym class (id. at 239), she was nevertheless able to "complete 20 minutes of activity before she needs a rest" (id.); able to jump rope regularly (id. at 225, 237); able to carry her bookbag to and from school (although it was recommended she monitor its

weight) (id. at 235); and able to complete the physical therapy exercises recommended by Dr. Kaplan (id. at 227-28, 233, 247). This new evidence thus reinforces the ALJ's conclusion that while A.B.K. experienced limitations in this functional domain, they were not significant enough to be "marked." Cf. Raglin v. Massanari, 39 Fed. Appx. 777, 781 (3d Cir. 2002) ("In this case . . . the new evidence is largely repetitive of the evidence in the record. Although it confirms that [claimant] has suffered from recurrent depression and learning disabilities, the ALJ did not deny the existence of those conditions. She simply concluded they did not prevent Raglin from obtaining substantial gainful employment. The new reports do not effectively refute this.").

### b. Attending and Completing Tasks

The domain of attending and completing tasks involves "how well you are able to focus and maintain your attention, and how well you begin, carry through, and finish your activities." 20 C.F.R. § 416.926a(h). In individual should be able to "focu[s] long enough to initiate and complete an activity or task" and "to return to the task without other people having to remind you frequently to finish it." Id. § 416.926a(h)(1)(i). The regulations provide that when assessing the abilities of children aged 6 to 12 in this domain, an ALJ should consider whether they can focus their attention sufficiently to "follow directions, remember and organize [their] school materials, and complete classroom and homework assignments"; "concentrate on details and not make careless mistakes in [their] work"; "stay on task and in place when appropriate"; and "sustain [their] attention well enough to participate in group sports, read by [themselves], and complete family chores." Id. § 416.926a(h)(2)(iv). Examples of limited functioning in this domain are if an individual is "easily startled, distracted, or overactive to sounds,

sights, movements or touch"; is "slow to focus on, or fail to complete activities of interest"; or is "easily frustrated and give[s] up on tasks." Id. § 416.926a(h)(3).

The ALJ concluded A.B.K.'s limitation in the attending and completing tasks domain was "less than marked" because her "slower pace [] evidently has not adversely affected her academic performance" and "her absenteeism has not had serious ramifications." (Tr. 24). This finding is supported by substantial evidence in the record. A.B.K.'s third grade teacher gave A.B.K. a "1" on a scale of 1-5, with 1 being "no problem" and 5 being "a very serious problem," for eleven out of thirteen activities in the attending and completing tasks domain. Activities in which she scored a "1" included "focusing long enough to finish assigned activity or task"; "carrying out multi-step instructions"; "changing from one activity to another without being disruptive"; and "completing work accurately without careless mistakes." (Tr. 117). While the teacher gave A.B.K. a "3" for two activities, completing homework assignments and working at a reasonable pace (id.), the overall evaluation is consistent with the ALJ's determination that A.B.K. suffered *some* limitations in attending and completing tasks, but not marked limitations.

The medical reports further support the ALJ's finding. Dr. Nasuti evaluated A.B.K. in March 2007 and observed "she is attending and completing tasks in school very well." (Tr. 143). Dr. Kaplan saw A.B.K. two years later and wrote: "[A.B.K.] is currently in the 4th grade and doing well in school." (Id. at 215). In a "childhood disability evaluation" conducted on March 20, 2008 for the Social Security Administration, Dr. Frank Procopio found A.B.K. had "no limitation" in attending and completing tasks. (Id. at 197).

13

Given this evidence, the ALJ did not err in his determination. As the reports from her teacher and doctors show, A.B.K. was able to amply focus her attention to "follow directions" and "complete classroom and homework assignments," and she could "concentrate on details and not make careless mistakes in [her] work." 20 C.F.R. § 416.926a(h)(2)(iv). While she might have worked at a slower pace compared to her peers, there was no evidence she was "easily startled, distracted, or overactive to sounds, sights, movements or touch," "fail[ed] to complete activities of interest," or was "easily frustrated and g[ave] up on tasks." Id. § 416.926a(h)(3). Accordingly, substantial evidence confirms the ALJ's finding that whatever shortcomings A.B.K. experienced in attending and completing tasks, they did not "interfere seriously" with her abilities and thus were not marked. Id. § 416.926a(e)(2)(i).

## 2. The ALJ's Decision Not to Credit the Testimony of A.B.K. and Her Mother Regarding the Severity of Her Symptoms

Plaintiff's second broad contention is that the ALJ erred as a matter of law in discrediting the testimony of A.B.K. and her mother "without providing any explanation for his adverse credibility finding." (Plaintiff's Brief and Statement of Issues in Support of Request for Review, at 14) (ECF 10). There was nothing erroneous about the ALJ's determination. ALJs have discretion to decide whether testimony by a claimant, when weighed against objective medical evidence, is credible. The ALJ's determination here was supported by substantial objective evidence in the record.

At the hearing before the ALJ on February 19, 2009, both A.B.K. and her mother appeared. A.B.K. testified that she experienced pain in her ankles, knees, elbows, neck, wrist, and chest "about five times a week." (Tr. 37). She felt these pains "sometimes," she

14

stated, rather than all of the time, and in "different places at different times." (Id. at 36-37). She also testified to feeling nauseated and dizzy "[a]bout one time each day" (id. at 40), and to occasionally feeling tired first thing in the morning after a full night's sleep (id. at 41). A.B.K. related that there are days she does not go to school at all and days she has to leave school early, due to her symptoms. (Id. at 37). At recess, she often avoids playing with the other kids "because my joints start to hut and I get tired." (Id. at 40).

A.B.K.'s mother, Ms. Williams, testified that her daughter frequently complained about "not feeling good" due to the side-effects from her medications. (Id. at 45). She also stated that her daughter experienced joint pain, chest pain, and fatigue on a regular basis (id. at 46), and had to miss fourteen days of school in the prior year and twelve days of school in the current year due to doctor's appointments and to not feeling well (id. at 47).

The ALJ concluded A.B.K. and Williams' testimony, to the extent it suggested A.B.K.'s impairment was functionally equivalent to a listed disability, was not credible. The ALJ held: "After considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the statements concerning the intensity, persistence and limiting effects of the claimant's symptoms are not credible to the extent they are inconsistent with finding that the claimant does not have impairment or impairments that functionally equals the listings for the reasons explained below." (Id. at 23).

The ALJ did not err in making this determination regarding the witnesses' credibility. The Commissioner's regulations direct ALJs to determine if an individual is disabled by "consider[ing] all [the claimant's] symptoms, including pain," as well as the

extent to which those "symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a); see also id. ("We will consider all of your statements about your symptoms, such as pain . . . . However, statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s). . ."). An ALJ therefore "has discretion to 'evaluate the credibility of a claimant and . . . arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged." Cerrato v. Comm'r of Soc. Sec., 386 Fed. Appx. 283, 286 (3d Cir. 2010) (quoting Brown v. Schweiker, 562 F. Supp. 284, 287 (E.D. Pa. 1983)). Here, the ALJ properly weighed A.B.K. and Williams' testimony against the "objective medical evidence" in the record and decided that because it conflicted with that evidence, it should not be credited. For instance, the teacher evaluation had concluded A.B.K., despite her impairment, was "a good student . . . performing on grade level in all areas" and experienced no problems interacting and relating with others, acquiring information, moving about, or caring for herself. (Tr. 116-121). The examination by Dr. Procopio for the Social Security Administration found A.B.K's impairment was "not severe" and that she had "no limitation" in any of the six functional domains. (Id. at 195-200). The medical reports by Drs. Wright, Drummond, and Kaplan, all at CHOP, found A.B.K. was "well developed" and had "no acute distress"; was "doing well in school"; had a "normal gait" and could "heel walk, toe walk, and deep-knee bend with good balance"; and "could "play and run around with her friends." (Tr. 202, 203, 206. 215). Given this objective evidence, the ALJ was reasonable in discrediting A.B.K. and Williams' oral testimony.

**IV. Conclusion**

For the foregoing reasons, and after careful consideration of all of the parties' arguments, Williams' Request for Review is DENIED and her Complaint is DISMISSED with prejudice. An appropriate Order follows.